UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

     v.                                     CRIMINAL NO. 4:06cr40

DARYL F. LOCUST,

           Defendant.

### OPINION

This matter comes before the court on Defendant's "Motion Under § 3582(c)(1)(A) In the Wake of the First Step Act Based on Extraordinary and Compelling Reasons" ("Motion") filed pro se. ECF No. 117.[1] For the reasons explained below, Defendant's Motion is **DENIED**.

### I. BACKGROUND

On January 26, 2007, a jury found Defendant guilty of twenty counts of a twenty-one count Superseding Indictment and not guilty on Count Seven. Doc. No. 21.[2] Count One charged Defendant with Conspiracy to Possess with Intent to Distribute and Conspiracy to Distribute One (1) Kilogram or More of Heroin, Fifty (50) Grams or More of Cocaine Base, and Five Hundred (500) Grams or More of Cocaine, in violation of 21 U.S.C. § 846. Doc. No. 12 at 2-12.

---

[1] Filings available electronically through the court's Electronic Case Filing System ("ECFS") are assigned "ECF" numbers; those that preceded the ECFS are assigned "Doc." numbers.

[2] Count Seven charged Defendant with Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2.

Count Two charged Defendant with Conspiracy to Import Heroin, in violation of 21 U.S.C. § 963. Doc. No. 12 at 13-17. Counts Nineteen and Twenty each charged Defendant with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A). Doc. No. 12 at 29-30.

On May 3, 2007, the court sentenced Defendant to imprisonment for a total term of life plus three hundred sixty (360) months, and a supervised release term of ten (10) years. Doc. No. 27 at 3-4. The prison sentence included concurrent life terms on Counts One and Two, and terms of sixty (60) and three hundred (300) months on Counts Nineteen and Twenty, respectively, to be served consecutively to Defendant's life sentences and to each other. Id. at 3.[3] At the time of sentencing, this was the minimum sentence the court was permitted to impose. ECF No. 64 (Presentence Investigation Report ("PSR")) at 1. That said, the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") also recommended this sentence given Defendant's criminal history category of IV and adjusted offense level of forty-six (46). Id. at 47-48. On direct appeal, the Fourth Circuit affirmed Defendant's convictions. United States v. Locust, 260 F. App'x 571 (4th Cir. 2008).

---

[3] Defendant received varying terms of imprisonment for the remaining counts of conviction, which the court ordered to run concurrently with his life sentences. Doc. No. 27 at 3.

On October 13, 2009, Defendant filed a Motion to Vacate Under § 2255, Doc. No. 41, which the court denied on May 12, 2010, following an evidentiary hearing. Doc. No. 50. The Fourth Circuit denied a certificate of appealability and dismissed Defendant's appeal. See United States v. Locust, 448 F. App'x 412 (4th Cir. 2011).

Thereafter, Defendant filed several additional motions for postconviction relief. On October 18, 2012, Defendant moved the court to reduce his sentence under 18 U.S.C. § 3582(c)(2) and Guidelines Amendment 750, which implemented the reduced statutory penalties for "crack" cocaine offenses established by the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 [hereinafter "Fair Sentencing Act"] (codified at 21 U.S.C. §§ 841, 960). See Doc. No. 61. The United States responded, arguing that a reduction was improper because the relevant changes "did not have the effect of lowering [Defendant's] guidelines range . . . ." Doc. No. 67 at 2-3. The court agreed, and on January 15, 2013, the undersigned denied this Motion. Doc. No. 68.

Next, in 2015, Defendant again requested a reduction in sentence, this time pursuant to Guidelines Amendment 782, which revised how base offense levels for certain drug offenses are calculated. ECF No. 72. In its Order denying the Motion, the court recognized that the Amendment would result in a reduced Guidelines range of three hundred sixty (360) months to life for Defendant's

drug charges. ECF No. 74 at 1. However, the court explained that it lacked the authority to reduce Defendant's sentence because life imprisonment was the mandatory minimum sentence for Count One as of the date of his sentencing. Id. Furthermore, the court opined that, even if it did have such authority, it would not exercise its discretion because Defendant's sentence remained appropriate in light of the factors under 18 U.S.C. § 3553(a). Id. at 2.

In his third motion for a sentence reduction, filed October 3, 2019, Defendant moved the court to reduce his sentence pursuant to Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 [hereinafter "First Step Act"]. ECF No. 79. The court denied this Motion, ECF No. 86, as well as Defendant's Motion for Reconsideration, ECF No. 92, noting that Defendant was "subject to mandatory life imprisonment on Count One due to the heroin portion of the offense," and that Section 401(c) of the First Step Act, which explains that the changes to the mandatory minimums are not retroactively applicable, prohibited the court from altering the sentence. See ECF No. 94 at 1-2 (Order denying Motion for Reconsideration discussing ECF No. 86); see also United States v. Locust, 818 F. App'x 298 (4th Cir. 2020) (affirming these Orders).

This brings us to the Motion presently before the court, which Defendant filed, pro se, on July 22, 2021. ECF No. 117. In his

Motion and associated briefs, Defendant forwards five reasons that he argues warrant a reduction in sentence to time served:

> (1) the spread of the novel Coronavirus ("COVID-19"), ECF No. 123 at 1, 4, 6;
>
> (2) sentencing disparities created by the passage of the First Step Act, ECF No. 117 at 3-9, Ex. 1 1-4; ECF No. 123 at 16-22;
>
> (3) his rehabilitation over his years of incarceration, ECF No. 117 at 10;
>
> (4) the "trial penalty imposed upon [Defendant] for exercising his right to jury trial," ECF No. 123 at 15; and
>
> (5) the court's consideration of evidence at sentencing not found by a jury, id. at 16-17.[4]

The United States filed a Response in Opposition on September 7, 2021. ECF No. 120. It submits that Defendant's life sentence should stand, correctly pointing out that Sections 401 (altering drug offense mandatory minimums) and 403 (addressing § 924(c) mandatory minimums) of the First Step Act were not made retroactive, and arguing that Defendant has not attained the "heightened standard" required for relief under § 3582(c)(1)(A)(i). See id. at 9-10. It reasons that there is nothing "extraordinary" about a Defendant's confinement for the

---

[4] Defendant raised his arguments concerning COVID-19, Section 404 of the First Step Act, his "trial penalty," and the right to jury factfinding for the first time in his Reply. While these issues were not properly raised, see Fed. R. Crim. P. 47(b) ("[a] motion must state the grounds on which it is based"), respecting Defendant's pro se status, and because additional briefing is unnecessary to resolve them, the court will address Defendant's arguments on their merits.

mandatory minimum period as of the date of sentencing, and that Defendant "would still face a guidelines sentence of life today," if he were sentenced anew. See id.[5] Alternatively, the United States argues that even if the court finds Defendant has established "extraordinary and compelling reasons," granting the Motion is not appropriate, as the factors enumerated in 18 U.S.C. § 3553(a) counsel against a sentence reduction. Id. at 11-12. Defendant filed his Reply on October 12, 2021. ECF No. 123. Having been fully briefed, the Motion is now ripe for judicial determination.

## II. EXHAUSTION OF REMEDIES

Before the court may consider a motion under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf," or there must have been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Id. § 3582(c)(1)(A). The Fourth Circuit recently explained that defendants may satisfy this exhaustion requirement by "wait[ing] 30 days from the date of their initial request to file a motion in the district court," even if the warden has already responded to

---

[5] As explained below, this description is imprecise. While the Guidelines range would include a life sentence, it would also encompass a term as low as 480 months. See infra Part III.A.2.v.

their request. United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021) (collecting cases). The court further clarified that the exhaustion requirement "is a non-jurisdictional claim-processing rule," and therefore "may be waived or forfeited." Id. at 130.

Defendant submitted a request for compassionate release to the warden of his institution on July 21, 2020. ECF No. 117-2 at 1. Because more than thirty (30) days have passed since Defendant made his request, he has satisfied the threshold exhaustion requirement. See 18 U.S.C. § 3582(c)(1)(A).

### III. MERITS OF DEFENDANT'S MOTION

For a court to reduce a defendant's sentence under § 3582(c)(1)(A)(i), it must find that "extraordinary and compelling reasons" justify such a reduction. The defendant bears the burden of showing that this requirement is satisfied. See, e.g., United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021); United States v. Noel, No. 3:08-cr-186-03, 2021 WL 1602402, at *2 (E.D. Va. Apr. 23, 2021) (Payne, J.). Even if a defendant carries his burden, a court may only reduce his sentence "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A). Any such reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." Id.; see United States v. McCoy, 981 F.3d 271, 275-76 (4th Cir. 2020).

In McCoy, the Fourth Circuit held that, in the context of prisoner-filed § 3582(c)(1)(A) motions, "there currently exists no 'applicable policy statement'" because the Commission has not issued a policy statement since the passage of the First Step Act. 981 F.3d at 281-82 (alteration omitted). Therefore, until the Sentencing Commission issues an updated policy statement, "district courts are 'empowered to consider any extraordinary and compelling reason for release that a defendant might raise.'" Id. at 284 (alteration omitted) (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)); see United States v. Davis, No. 21-6960, 2022 WL 127900, at *1-2 (4th Cir. Jan. 13, 2022) (holding district court abused discretion in determining that certain claims "categorically" could never "establish a sufficient reason for release"). In particular, the Fourth Circuit held that courts "may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." McCoy, 981 F.3d at 285-86.

Although the policy statement in United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 1B1.13 is no longer binding on this court in this case after the Fourth Circuit's decision in McCoy, the court finds certain of its provisions useful in addressing the instant Motion. For example, the court will still consider "the factors set forth in 18 U.S.C. § 3553(a), to the

8

extent that they are applicable," U.S.S.G. § 1B1.13, and whether "[t]he defendant is . . . a danger to the safety of any other person or to the community," id. § 1B1.13(2), because these considerations remain highly relevant to whether a reduction in sentence is warranted in this case.

## A. EXTRAORDINARY AND COMPELLING REASONS

Defendant offers five matters which he contends amount to "extraordinary and compelling reasons" for a reduction in sentence pursuant to § 3582(c)(1)(A)(i). For the reasons explained below, the court finds that none of these issues, individually or in combination, amount to an "extraordinary and compelling reason[]" for such a reduction. See Davis, 2022 WL 127900, at *2 (vacating and remanding denial of compassionate release where there was "no indication that the district court considered [the defendant's] circumstances, as a whole").

### 1. Effect of COVID-19 on Defendant

Defendant submits that his "concerns and fears about the spread and effects of COVID-19," as well as the risk of "[b]eing potentially exposed to, or possibly contracting [the virus]," warrant a reduction in sentence. ECF No. 123 at 1, 4, 6.

"Fear of COVID doesn't automatically entitle a prisoner to release." United States v. Thompson, 984 F.3d 431, 435 (5th Cir. 2021). Rather, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate

9

release when an inmate shows both a particularized susceptibility to the disease <u>and</u> a particularized risk of contracting the disease at his prison facility." <u>United States v. Feiling</u>, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (Novak, J.) (emphasis added).

"To establish a particularized susceptibility to COVID-19, courts have required defendants to provide evidence that they suffer from a medical condition identified by the Centers for Disease Control and Prevention ("CDC") as a COVID-19 risk factor." <u>United States v. Chandler</u>, Crim. No. 3:15-mj-122, 2020 WL 6139945, at *5 (E.D. Va. Oct. 19, 2020) (Novak, J.) (citing <u>United States v. Beahm</u>, No. 1:05-cr-249, 2020 WL 4514590, at *2 (E.D. Va. Aug. 5, 2020) (Hilton, J.); <u>United States v. White</u>, No. 3:18-cr-61, 2020 WL 3442171, at *5 (E.D. Va. June 23, 2020) (Hudson, J.)). However, to satisfy the "particularized susceptibility" requirement, a defendant must do more than merely point to a condition that constitutes a COVID-19 risk factor. <u>See</u> <u>Chandler</u>, 2020 WL 6139945, at *5 (finding requirement not satisfied where the defendant's asthma was "mild and intermittent"). Instead, defendants must provide evidence establishing why their condition is so severe that it warrants a sentence reduction. <u>See</u> <u>id.</u> (noting that the relevant medical records did not indicate that the defendant's asthma was severe enough to constitute "an extraordinary and compelling reason for his compassionate release").

Here, Defendant does not claim to suffer from any condition identified as a COVID-19 risk factor. Indeed, he admits that his "medical records reveal that he is 41 years old" and "presents no significant medical conditions." ECF No. 123 at 4. Accordingly, Defendant has not established a particularized susceptibility to COVID-19.

Moreover, Defendant has not shown that he faces a particularized risk of contracting COVID-19 at his facility, FCI McDowell. A large number of inmates and staff at this facility have been inoculated against COVID-19 with vaccines shown to be highly effective[6] at preventing serious COVID-19 illness.[7] This vaccination effort has apparently succeeded in staving off major outbreaks of the disease: as of March 15, 2022, FCI McDowell had zero (0) active cases of COVID-19 among inmates and staff members.[8] The court finds that the low prevalence of COVID-19 at Defendant's

---

[6] CDC, Benefits of Getting a COVID-19 Vaccine, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html.

[7] As of March 15, 2022, 175 staff members and 1,186 of the 1,517 prisoners at FCI McDowell were fully vaccinated against COVID-19. See Fed. Bureau of Prisons, COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/ (vaccination statistics); Fed. Bureau of Prisons, FCI McDowell, https://www.bop.gov/locations/institutions/mcd/ (number of inmates). This equates to a roughly 78% vaccination rate among the inmate population.

[8] See Fed. Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/.

11

facility, particularly in light of the BOP's ongoing mitigation efforts, does not subject Defendant to a particularized risk of contracting the virus. See United States v. Spencer, 521 F. Supp. 3d 606, 612 (E.D. Va. 2021) (Smith, J.) (denying motion where the defendant's facility had only two (2) active COVID-19 cases among inmates).

Thus, Defendant has not demonstrated a particularized susceptibility to COVID-19, or that he faces a particularized risk of contracting the virus at FCI McDowell, and therefore has not shown extraordinary or compelling reasons justifying a sentence reduction on this basis.

### 2. Sentencing Disparities

Defendant argues that sentencing disparities created by three aspects of the First Step Act constitute a basis for compassionate release under § 3582(c)(1)(A)(i). The court's evaluation of this claim will proceed in three steps. First, the court will review the Fourth Circuit's decision in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020), laying the groundwork for the theories upon which Defendant relies. Next, the court will discuss the effect of intervening developments in sentencing law relevant to Defendant's sentence. Finally, the court will conduct an "individualized assessment[]" of all of the facts and circumstances of Defendant's case, including his characteristics, sentence, criminal history, and postconviction conduct. See id. at 286.

12

### i. United States v. McCoy

In McCoy, the defendants were each convicted of and sentenced on multiple offenses under 18 U.S.C. § 924(c) prior to the December 21, 2018, passage of the First Step Act. 981 F.3d at 275, 277-79. At the time of their sentencing hearings, § 924(c)(1)(C) required a so-called "stacked" sentence for a "second or subsequent conviction" under § 924(c) - that is, either enhanced mandatory minimum sentences of twenty (20) years or twenty-five (25) years for a second or subsequent § 924(c) conviction, depending upon the statute at the time of conviction. See id. at 275, 277, 278 n.3. Pursuant to then-applicable law, "a conviction was treated as 'second or subsequent,' triggering the [enhanced mandatory] minimum sentence, even if the first § 924(c) conviction was obtained in the same case." McCoy, 981 F.3d at 275. The First Step Act "ended this practice . . . by clarifying that the [enhanced] mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and already 'has become final.'" Id. (emphasis added) (quoting 18 U.S.C. § 924(c)(1)(C)).

Although the First Step Act did not make this reform retroactive to cases in which defendants have already been sentenced, the defendants in McCoy filed motions for compassionate release, requesting that the court take into consideration the fact that their sentences would be much shorter if they were sentenced under the First Step Act. 981 F.3d at 274. The district

courts granted the motions, and the defendants' sentences were reduced to time served. Id. at 274, 277, 279. The United States appealed, and the Fourth Circuit affirmed, holding that district courts reviewing motions for compassionate release may properly consider "the length of [] defendants' sentences and the fact that those sentences would be dramatically shorter today . . . ." Id. at 285. The Fourth Circuit reasoned that while not all defendants convicted under § 924(c) should receive new sentences, courts may grant relief on a case-by-case basis where a defendant meets "the heightened standard of 'extraordinary and compelling reasons' . . . ." See id. at 287.

Applying this reasoning, courts in this Circuit have found that other sentencing disparities created by nonretroactive changes in sentencing law can constitute "extraordinary and compelling reasons" for a sentence reduction pursuant to § 3582(c)(1)(A)(i). For instance, defendants who received a "career offender" enhancement at sentencing pursuant to U.S.S.G. § 4B1.1 based on offenses that would no longer support such an enhancement may articulate a cognizable claim for a sentence reduction. See United States v. Trice, No. 7:13-cr-34-1, 2021 WL 402462, at *3 (W.D. Va. Feb. 3, 2021); United States v. Alexander, No. 2:19-cr-5, slip. op. at 17-19 (E.D. Va. Nov. 17, 2021) (Smith, J.). Claims based upon the First Step Act's narrowing of offenses sufficient to trigger mandatory minimum sentences for

drug convictions under 21 U.S.C. § 841 are likewise cognizable. See Murphy v. United States, No. 2:15-cr-103, 2021 WL 3177409, at *4-6 (E.D. Va. July 27, 2021) (Jackson, J.) (granting relief, in part, on this basis).

There are three aspects of the First Step Act relevant to Defendant's argument for compassionate release:

(1) Section 404, the portion of the Act expressly giving courts permission to retroactively apply the sentencing changes applicable to "crack" offenses established by the Fair Sentencing Act, see ECF No. 123 at 17-21;

(2) Section 401, which altered the mandatory minimum sentences applicable for certain drug offenses, and its interaction with U.S.S.G. Amendment 782, see ECF No. 117 at 3-9, Ex. 1 2-4; and

(3) Section 403, which ended the practice of "stacking" § 924(c) sentences, id. at Ex. 1 1-2.

The court will address each of these issues in turn.

### ii. Section 404

On two occasions, the court has rejected Defendant's request for a reduction in sentence pursuant to Section 404. See ECF No. 86 (Order denying First Step Act relief); ECF No. 94 (Order denying Motion for Reconsideration). Defendant apparently asserts that the same argument twice rejected by this court now justifies a sentence reduction pursuant to § 3582(c)(1)(A)(i). See ECF No. 123 at 17-21. The court will briefly review its earlier reasoning, which is equally applicable to the instant Motion.

15

In finding Defendant guilty of the offense charged in Count One of the Superseding Indictment, the jury indicated on the Special Jury Verdict Form that it found one (1) kilogram or more of heroin, fifty (50) grams or more of "crack" cocaine, and 500 grams or more of powder cocaine involved in Defendant's drug conspiracy. Doc. No. 21 at 1-2. As the court noted in its earlier Order, Section 404(b) gives district courts the discretion to retroactively apply Sections 2 and 3 of the Fair Sentencing Act. ECF No. 87 at 1. The court also pointed out that the "Fair Sentencing Act did not change the penalties for offenses involving drugs other than cocaine base," and therefore that Section 404 of the First Step Act could not justify a reduction in Defendant's sentence on Count One, which was independently supported by the jury's finding of the heroin quantity. See id. at 1-2.

For these same reasons, the court now concludes that the effect of Section 404 on Defendant's sentence does not constitute an "extraordinary and compelling" reason for reducing Defendant's sentence. See 18 U.S.C. § 3582(c)(1)(A)(i).

### iii. Section 401 and Amendment 782

At the time of Defendant's sentencing, 21 U.S.C. § 841(b)(1)(A) provided that defendants convicted of conspiring to violate the statute "after two or more prior convictions for a felony drug offense have become final . . . shall be sentenced to a mandatory term of life imprisonment without release . . . ." 21

16

U.S.C. § 841(b)(1)(A) (2007) (emphasis added); id. § 846 (providing that attempting or conspiring to violate § 841 subjects the defendant to the same penalties as those prescribed for the substantive offense). Following the United States' filing of an information pursuant to 21 U.S.C. § 851 establishing that Defendant sustained two such convictions, Doc. No. 16, the court imposed the mandatory minimum sentence of life on Count One. Doc. No. 27 at 3.

Section 401 of the First Step Act amended the § 841 mandatory minimum, which now provides that the two predicate convictions must be for "serious drug felon[ies]," and that the sentence triggered is "a term of imprisonment of not less than 25 years," rather than life. First Step Act § 401(a)(2)(A)(ii) (codified at 21 U.S.C. § 841(b)(1)(A)). To be a "serious drug felony," the predicate offense must satisfy three requirements: (1) the offense must be among those described in 18 U.S.C. § 924(e)(2); (2) the defendant must have "served a term of imprisonment of more than 12 months" pursuant to his conviction; and (3) the defendant must have been released from his term of imprisonment "within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(57).

The United States correctly concedes that Defendant "did not serve more than 12 months for two of his three prior felony drug convictions," and therefore that, "were he sentenced today," Defendant would not be subject to the mandatory minimum sentence

17

he received on Count One. See ECF No. 120 at 6.[9] However, the court notes that Defendant would still be subject to at least a ten (10) year mandatory minimum sentence, and that the statutory maximum for Defendant's offense of conviction remains life imprisonment. 21 U.S.C. § 841(b)(1)(A)(i).[10] The 360 months to life Guidelines sentencing range that would be applicable to Defendant's drug offenses, incorporating the effect of Amendment 782, would also encompass the sentence originally imposed on Count One.[11]

---

[9] Though neither party discusses the issue, on Count Two, Defendant would be subject to a lower mandatory minimum and statutory maximum were he to be sentenced today. See 21 U.S.C. § 963 (noting that attempt and conspiracy are "subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy"); id. § 960(a), (b)(2) (establishing five (5) year mandatory minimum and forty (40) year statutory maximum for a violation of 21 U.S.C. § 952 involving one hundred (100) grams or more of heroin).

[10] Neither party directly addressed whether any one of Defendant's prior convictions constitute a "serious drug felony." See 21 U.S.C. § 802(57). It appears that Defendant's November 28, 2000, conviction for Possession With Intent to Distribute Cocaine may very well qualify. PSR ¶ 67. Defendant served ten (10) months in prison initially, and was sentenced to more than three (3) additional years of confinement in 2003 and 2005 for violating the terms of his probation imposed for the offense. Id. A single qualifying conviction triggers a fifteen (15) year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). For the purposes of assessing Defendant's Motion, however, the court assumes that Defendant would be subject to the lesser ten (10) year mandatory minimum, if he were sentenced today.

[11] Defendant was attributed with the following drug quantities at sentencing: 11,252 grams of heroin, 7,189.325 grams of cocaine, and 1,614.225 grams of "crack" cocaine. PSR at 39. This yields a converted drug weight of approximately 18,454.26 kilograms of marijuana. U.S.S.G. § 2D1.1 Application Note 8(D) (Drug Conversion Tables). This converted drug weight now triggers a base offense

### iv. Section 403

Defendant was convicted of violating 18 U.S.C. § 924(c), as alleged in Counts Nineteen and Twenty of the Superseding Indictment. Doc. No. 12 at 29-30. Prior to these convictions, Defendant had not sustained a conviction for a violation of § 924(c). PSR ¶¶ 60-70. Because Defendant was convicted and sentenced prior to the passage of the First Step Act, the court was required to treat Defendant's conviction on Count Twenty as a second or subsequent § 924(c) conviction subject to an enhanced mandatory minimum penalty. Accordingly, the court imposed the mandatory minimum sentences of five (5) years on Count Nineteen and twenty-five (25) years consecutive on Count Twenty. Doc. No. 27 at 3.

However, because the offense conduct giving rise to Count Twenty did not occur after another § 924(c) conviction had "become final," Defendant would face a sentence on Count Twenty of only five (5) years consecutive, if he were sentenced today for the same crime. See 18 U.S.C. § 924(c)(1)(C) (providing that prior conviction must have "become final"). Hence, Defendant was

---

level of 34. U.S.S.G. § 2D1.1(c) (Drug Quantity Table). This level is four less than the base level of 38 that applied when Defendant was sentenced. See PSR at 39. Since Defendant's various enhancements would still be imposed today, Defendant's total offense level would be 42, which, with his criminal history category of IV, yields a Guidelines range of 360 months to life. See U.S.S.G. Sentencing Table; see also ECF No. 74 at 1 (explaining that this would be the resulting Guidelines range).

sentenced to a term of imprisonment on Count Twenty that is twenty (20) years longer than "the sentence[] Congress now believes to be an appropriate penalty for [Defendant's] conduct." <u>McCoy</u>, 981 F.3d at 285.[12]

### v. Individualized Assessment of Defendant's Sentence

To review, there are two relevant differences between how Defendant was sentenced in 2007, and how Defendant's sentencing hearing would proceed today. First, Defendant's mandatory minimum sentence would be much less. Defendant would not be subject to a mandatory term of life imprisonment on Count One, or a mandatory twenty-five (25) year consecutive term on Count Twenty. Instead, the court would be required to impose a mandatory prison term of ten (10) years on Count One, and consecutive five (5) year terms on Counts Nineteen and Twenty, meaning that Defendant would face a total mandatory minimum sentence of twenty (20) years of imprisonment today. Second, Defendant's Guidelines sentence range would be 360 months to life on Count One, to be followed by 120 months consecutive on Counts Nineteen and Twenty. Thus, the lowest end of Defendant's Guidelines sentence would be four hundred eighty

---

[12] Defendant's sentence on Count Twenty is also twenty (20) years longer than the Guidelines sentence that would apply if he were sentenced today. The applicable Guidelines sentence for Count Twenty would change as a result of the First Step Act's reduced statutory minimum sentence because "the guideline sentence [for a violation of § 924(c)] is the minimum term of imprisonment required by statute." U.S.S.G. § 2K2.4(b).

(480) months, rather than life imprisonment plus three hundred
sixty (360) months.[13]

The court addressed many of the factors relevant to assessing
Defendant's sentence on Count One in its July 13, 2015, Order
denying Defendant's Motion for a Sentence Reduction pursuant to
Guidelines Amendment 782. See ECF No. 74. In its Order, before
McCoy was decided, the court recognized that applying Amendment
782 would result in a Guidelines range of three hundred sixty (360)
months to life on Defendant's drug counts. See id. at 1. The court
noted that because Defendant was subject to a statutory mandatory
minimum sentence of life on Count One, it could not reduce
Defendant's sentence. Id. It also explained that, even if it could
have reduced Defendant's sentence, it would not do so because a
reduction would not have been appropriate in light of the court's
assessment of the § 3553(a) factors. Id. at 2.

Following McCoy, the court recognizes that it is empowered to
grant Defendant's request for immediate release on his sentence of
life plus three hundred sixty (360) months, or a lesser reduction.

---

[13] The sentences on Counts Nineteen and Twenty may not "run
concurrently with any other term of imprisonment imposed on the
[Defendant], including any term of imprisonment imposed for the
. . . drug trafficking crime during which the firearm was used,
carried, or possessed." 18 U.S.C. § 924(c)(1)(D)(ii); see U.S.S.G.
§ 2K2.4 Application Note 2(A). The Guidelines would call for a
sentencing range of 360 months to life on Count One and a 120 month
consecutive term on the § 924(c) counts. See supra notes 11-12 and
accompanying text.

In so doing, the court also recognizes that any reduction on the consecutive sentences only, or even on the concurrent life sentence imposed on Count Two,[14] would not at this juncture affect the life sentence imposed on Count One. Cf. Davis, 2022 WL 127900, at *1 (vacating and remanding denial of compassionate release where "the court failed to consider that the existence of a possibly void conviction could potentially provide extraordinary and compelling reasons . . . given the appropriate circumstances (and other factors), even [in] the absence of an effect on his sentence"). Still, the sentencing differences discussed above do not automatically give rise to a compelling reason for a reduction in sentence. See McCoy, 981 F.3d at 287 ("[O]nly those defendants who can meet the heightened standard of 'extraordinary and compelling reasons' may obtain relief."). When deciding to reduce the McCoy defendants' sentences to time served, the district courts "took seriously the requirement that they conduct individualized inquiries," and considered "such factors as the defendants' relative youth at the time of their offenses, their post-sentencing conduct and rehabilitation, and the very substantial terms of imprisonment they already served." McCoy, 981 F.3d at 288. The courts also found the defendants' lack of substantial criminal histories at the time they committed their offenses relevant. Id.

---

[14] See supra note 9 and accompanying text.

at 277-79 (discussing criminal histories and noting that none of
the defendants had served jail time).

Though Defendant was relatively young at the time of his
offense, and has served a substantial term of imprisonment thus
far, that is where his similarities with the McCoy defendants end.
Defendant had a substantial criminal history before committing the
offenses giving rise to the prison term he challenges.[15] Moreover,
his record of post-sentencing conduct and rehabilitation is
lackluster at best.[16] The court also notes that Defendant's life
sentence on Count One is within the Guidelines range that would be
applicable if he were sentenced today for the same crime. Cf.
Trice, 2021 WL 402462, at *1, 3-4 (reducing 151-month sentence to
time served where recalculated Guidelines range incorporating
intervening law was 100-125 months and sentence "would be nearly
complete"). As discussed below, the court concludes that the
seriousness of Defendant's offense conduct warrants a sentence at
the high end of the Guidelines range, even considering Defendant's
post-conviction conduct.[17]

Accordingly, upon an individualized inquiry into the facts

---

[15] See infra Part III.B.

[16] See infra Part III.A.3.

[17] See infra Parts III.A.3. (discussing postconviction
conduct), III.B. (reviewing § 3553(a) factors).

23

and circumstances surrounding Defendant's offenses, as well as his criminal history, personal characteristics, other arguments for compassionate release addressed herein, and post-offense conduct, the court concludes that intervening changes in sentencing law relevant to Defendant's offenses of conviction do not constitute an "extraordinary and compelling reason[]" justifying his release or a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).

### 3. Rehabilitation and Other Postconviction Conduct

Defendant argues that his rehabilitation while incarcerated, evidenced by the educational programs he has participated in and his religious devotion, warrant a sentence reduction. See ECF No. 117 at 10; ECF No. 123 at 19, 21.[18] He explains that he "is a changed man who has a story to share and much to give back to society and his community," and "seeks the opportunity of a second chance to do the right thing." ECF No. 123 at 21.

The court first notes that rehabilitation, alone, does not constitute an "extraordinary and compelling reason" for a reduction in sentence. 28 U.S.C. § 994(t). That said, the court recognizes that it may consider rehabilitation and other postconviction conduct, when paired with other factors, as an "extraordinary and compelling reason[]" for relief. 18 U.S.C.

---

[18] Defendant submitted exhibits evidencing his completion of roughly twenty (20) reading, health, exercise, personal development, and other educational courses. See ECF No. 117-2 at 8-20.

§ 3582(c)(1)(A)(i); see also Davis, 2022 WL 127900, at *1 ("successful rehabilitation efforts can be considered as 'one among other factors'" (quoting McCoy, 981 F.3d at 286 n.9)). On these facts, however, Defendant's rehabilitation argument does not articulate an extraordinary or compelling reason for a reduction in sentence in light of the full considerations herein of other matters raised by Defendant and the factors under 18 U.S.C. § 3553(a).[19]

While the court commends Defendant for taking the steps he has to improve himself, these steps are not "extraordinary." Instead, it appears to the court that, at best, Defendant has simply "do[ne] the things that prisoners are supposed to do" while incarcerated. United States v. Logan, 532 F. Supp. 3d 725, 735 (D. Minn. 2021) ("Prisoners are supposed to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary.").

However, it is not entirely clear that Defendant has even satisfied this baseline expectation. The court notes that Defendant has committed serious institutional infractions, even as recently as 2021. See ECF No. 125-1 (disciplinary record noting the following infractions: fighting (2021); possessing an

_____

[19] See infra Part III.B.

unauthorized item (2019); possessing drugs/alcohol (2013); being insolent to a staff member, assault (2011); interfering with staff (2010); phone abuse, assault, refusing to obey an order (2009); refusing to obey an order (two instances), failing to work as instructed, interfering with staff (2008); being insolent to a staff member (2007)). On this record, the court finds that Defendant's rehabilitation, in combination with the other reasons offered, does not warrant a reduction in sentence.

### 4. "Trial Penalty"

Defendant argues that he "received a mandatory life sentence not due to his actual culpability in the offense, but because of a trial penalty that resulted from his rejection of the government's plea offer and the exercise of his right to a jury trial." ECF No. 123 at 15. The court disagrees; nothing in the record or the law supports this assertion.

Defendant exercised his constitutional right to a trial by jury and rejected the United States' plea offer. Moreover, the fact that Defendant may have received a lesser punishment had he pleaded guilty to one or more of the offenses charged in the Superseding Indictment does not establish a violation of his constitutional rights. See Bordenkircher v. Hayes, 434 U.S. 357, 358-59, 365 (1978) (mandatory life sentence triggered by earlier convictions held constitutional despite earlier plea offer for recommendation of five-year sentence where prosecutor "no more

than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution"). As discussed above, Defendant received the statutorily prescribed minimum and recommended Guidelines sentence applicable at the time of his sentencing. See Doc. No. 27; PSR at 1, 48. Also, Defendant's life sentence on Count One remains within the Guidelines range that would be applicable today, even after giving Defendant the benefit of intervening nonretroactive changes in sentencing law.[20]

Defendant did not suffer a "trial penalty" warranting a sentence reduction under § 3582(c)(1)(A)(i), because of his rejection of a plea offer.

### 5. Calculation of Drug Weights at Sentencing

Defendant asserts that the court violated his Sixth Amendment right to trial by jury, when it considered the drug weights attributed to him in the PSR at sentencing. ECF No. 123 at 16-17. In Apprendi v. New Jersey, the Supreme Court articulated the rule concerning a criminal defendant's Sixth Amendment Right to jury factfinding: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000).

---

[20] See supra Part III.A.2.v.

No violation of the Apprendi rule occurred in Defendant's case. The jury found the drug weights attributable to Defendant as part of its verdict, and Defendant's sentence did not exceed the prescribed statutory maximum for his offenses under then existing law. See Doc. No. 21 (Special Verdict Form reflecting jury factfinding as to requisite drug weights); Doc. No. 27 (Judgment). Accordingly Defendant does not articulate a basis for a sentence reduction on this ground.

In sum, none of the five issues raised by Defendant, individually or in combination, amount to the "extraordinary and compelling reasons" required to justify a reduction in sentence under § 3582(c)(1)(A)(i).

## B. SECTION 3553(a) FACTORS

A court may only reduce a defendant's sentence under § 3582(c)(1)(A) "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable . . . ." 18 U.S.C. § 3582(c)(1)(A). That said, "[s]ection 3582(c)(1) permits a district court to reduce a sentence in 'any case' - not just cases where a sentence has been substantially served; not just in cases involving low-level or non-violent offenses." United States v. Kibble, 992 F.3d 326, 334 (4th Cir. 2021) (Gregory, C.J., concurring) (citing United States v. Gonzales, 520 U.S. 1, 5 (1997)). However, even if Defendant had presented "extraordinary and compelling reasons," the court finds

28

that a reduction in sentence would not be proper in this case, as the § 3553(a) factors weigh heavily against Defendant's release. See Kibble, 992 F.3d at 330, 332 (majority opinion affirming denial of a motion for compassionate release where the defendant's "health conditions . . . amounted to extraordinary and compelling circumstances," but "the § 3553(a) factors counseled against a sentence reduction").

First, the court acknowledges and credits Defendant's postconviction coursework and other efforts he has made at personal growth.[21] However, the court observes that Defendant's offense conduct was extremely serious, and that Defendant has served roughly eighteen (18) years of a life sentence. See PSR at 1 (noting that Defendant entered state custody for the instant offense conduct on December 16, 2004); Kibble, 992 F.3d at 331 (recognizing that district courts are "entitled to consider the amount of time [defendants] ha[ve] served as one factor in the § 3553(a) analysis" and citing United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020) and United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020)). While the amount of time remaining on Defendant's sentence is not a dispositive factor, at this juncture, Defendant's initial steps towards rehabilitation do not outweigh the seriousness of Defendant's offense conduct. See

---

[21] See supra Part III.A.3. (discussing Defendant's efforts at rehabilitation).

United States v. Bowser, 539 F. Supp. 3d 572, 576–77 (E.D. Va. 2021) (Smith, J.) (denying motion for compassionate release, in part, on this basis).

Though the court will not recite every aspect of the facts of Defendant's case here, it will highlight of some of the most troubling facts. Defendant's convictions stem from his leadership role in a years-long drug conspiracy. See generally PSR ¶¶ 17–55. From 2000 to 2004, Defendant travelled across state lines to procure dangerous drugs; sold heroin, powder cocaine, and "crack" cocaine in Virginia; and was regularly armed with a handgun as he completed these activities. See id. ¶¶ 17–38. Indeed, the PSR notes that throughout his offense Defendant "was in possession of at least six firearms . . . ." Id. ¶ 55. The court also notes that Defendant played an integral role directing the conspiracy, orchestrating and providing logistical support for multiple coconspirators' transportation and packaging of drugs and currency. See id. ¶¶ 20–49, 55. He even attempted to import heroin from Panama, an attempt that would have succeeded but for law enforcement intervention. See id. ¶¶ 45–49. At sentencing, Defendant was ultimately attributed with over eleven (11) kilograms of heroin, seven (7) kilograms of cocaine, and one and a half (1.5) kilograms of "crack" cocaine. Id. ¶ 56.

While incarcerated before his trial, Defendant continued to display a lack of respect for the law and disregard for the safety

of others. The PSR explains that on January 24, 2007, Defendant assaulted an individual who intended to (and did in fact) testify against him. Id. ¶ 108. Defendant "rushed at [the witness] and began punching him in the head," and resisted the four deputies who forcibly subdued him. See id. Defendant received a two-level obstruction-of-justice enhancement for the attack. Id.

The court is also cognizant of the substantial criminal history Defendant accrued prior to this current offense for which he is incarcerated. His earlier convictions include, but are not limited to, the following:

- Possession of Cocaine (1999), id. ¶ 65;

- Possession of Cocaine (2000), id. ¶ 66;

- Possession of Cocaine with Intent to Distribute (2000), id. ¶ 67;

- Contempt of Court (2001), id. ¶ 68; and

- Failure to Appear (2002), id. ¶ 70.

The court also notes that Defendant repeatedly violated the terms of his probation, and that shorter terms of incarceration and suspended sentences failed to deter him from subsequent criminal conduct. See id. ¶¶ 65-67.

Despite this record, Defendant asserts that "[n]o penological purpose is served by continuing to incarcerate [him]," ECF No. 123 at 10; that he "poses no danger to the public," id. at 15; and that his release is warranted because "his sentence is

substantially longer than similarly situated co-defendants," id. Defendant's extremely serious offense conduct, combined with Defendant's pre-offense criminal history, satisfies the court that the sentence originally imposed by the court is necessary "to reflect the seriousness of the offense, to promote respect for the law," "to afford adequate deterrence to criminal conduct," and, most importantly, "to protect the public from further crimes of the [D]efendant."   18 U.S.C.   § 3553(a)(2)(A)-(C)   (emphasis added).[22]

Moreover, given Defendant's leadership role in the years-long conspiracy, the substantial weight of drugs involved, his use of firearms, his significant pre-offense criminal history, and his jaded record of postconviction conduct, the court further concludes that Defendant's sentence, as originally imposed, does not create an unwarranted sentencing disparity when compared to similarly situated defendants, including his coconspirators. See id. § 3553(a)(6).[23]   In sum, Defendant's sentence remains

---

[22] This remains true despite the support Defendant would receive from family members following his release. See ECF No. 119 (letter from fiancé); ECF No. 126 (letter from aunt).

[23] The court also notes that while Defendant was convicted of twenty separate felonies by the jury, see Doc. No. 27, every other defendant related to this conspiracy pleaded guilty to only one or two offenses, PSR ¶¶ 4-16, and that accounts, in part, for any discrepancies in addition to varying criminal histories and circumstances of each individual.

"sufficient, but not greater than necessary," to achieve the aims of 18 U.S.C. § 3553(a).

## IV. CONCLUSION

Based on the foregoing, and having considered the effect of McCoy on Defendant's sentence, all the factors under 18 U.S.C. § 3553(a), and Defendant's offense conduct, criminal history, youth, and rehabilitation while incarcerated, Defendant's Motion for Compassionate Release, ECF No. 117, is **DENIED**. The Judgment entered on May 3, 2007, Doc. No. 27, remains in full force and effect.

The Clerk is **DIRECTED** to forward a copy of this Opinion to Defendant, the United States Attorney at Newport News, and the BOP.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

March 16, 2022

33